DWIGHT R. WOODFORD CO., INC. *vs.* ROBERT K. JOHNSON.

Suffolk. November 14, 1932. — January 3, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Contract,* Implied. *Agency,* Existence of relation. *Practice, Civil,* Ordering verdict.

At the trial of an action of contract by a corporation engaged in the business of insurance brokerage against one named as the insured in a policy, it appeared that the policy had been procured for the de-

fendant from a certain insurance company through the agency of one who died before the expiration of the term of the policy. There was but one witness for the plaintiff, its president and treasurer, who testified in substance that the executor of the will of the broker who procured the defendant's insurance assigned to him "all the clientele" of the broker "for the purpose of continuing their insurance in force"; that later he incorporated the plaintiff which took on his personal insurance business; that for a time the defendant paid premiums to the witness and then stopped; that the plaintiff wrote to the defendant as to arrearage in his premium account; and that the plaintiff had in its possession some receipts for premiums signed by the insurance company which had not been delivered to the defendant. The plaintiff sought to recover the amounts stated in such receipts. There was in evidence a letter from the defendant to the plaintiff's witness, undated, replying to a letter from the witness which was not in evidence, stating in substance that he knew that "in insurance circles and business it is the custom to take the renewal of a policy for granted," but that he could not pay because "sickness and death" had taken all his money. The plaintiff's witness also testified as to a later conversation with the defendant in which he in substance acknowledged that he knew the policy had been continued in force and that it was the custom of the insurance companies to do that, and stated that he did not wish the insurance; that he would be glad to pay the premiums but that he was heavily in debt and would not make a definite statement as to when he would make any payment. The judge refused to order a verdict for the defendant, and ordered a verdict for the plaintiff. *Held,* that

(1) There were questions for the jury, whether there was a custom in insurance circles for the agent to take charge of the renewal of insurance policies of the kind issued to the defendant, and whether the defendant expected his original agent, and the agency which took over the defendant's policy after that agent's death, to attend to that matter;

(2) It was proper to refuse to order a verdict for the defendant;

(3) The fact that the jury were not required to believe the plaintiff's witness, and the significance of possession by the plaintiff and not by the defendant of the several receipts raised questions for the jury upon which they might have found against the plaintiff;

(4) It was improper to order a verdict for the plaintiff.

CONTRACT. Writ in the Municipal Court of the City of Boston dated August 22, 1929.

On removal to the Superior Court, the action was tried before *Morton,* J. The only witness for the plaintiff was Dwight R. Woodford. Material evidence is described in the opinion. The judge denied a motion by the defendant that a verdict be ordered in his favor and ordered a verdict for the plaintiff in the sum of $71. The defendant alleged exceptions.

*E. J. Flynn, A. L. Baker, & S. P. Weston,* for the defendant.
No argument nor brief for the plaintiff.

PIERCE, J.   This is an action of contract upon an account annexed for insurance premiums, alleged by the plaintiff to have been paid on behalf of the defendant. The answer is a general denial, payment, and the further answer that the defendant "never entered into a contract with the plaintiff for any insurance; that if he entered into any contract for insurance, as alleged, it was with one Richard Buntin for a definite period of time which elapsed prior to the dates charged in the declaration." At the close of all the evidence the defendant moved in writing that a verdict be directed in his favor; the motion was denied and the defendant duly excepted. The plaintiff also moved in writing that a verdict be directed in its favor in the sum of $71 — the amount of the account annexed ($61) and interest ($10). The judge allowed the plaintiff's motion and directed a verdict for the plaintiff in the sum of $71. The defendant duly excepted to the allowance, the ruling and the order.

The material facts which the jury might reasonably find are as follows: On March 8, 1924, a special accumulative accident insurance policy was issued to the defendant by the Travelers Insurance Company, through the agency of one Richard W. Buntin. The policy ran for a term ending September 8, 1924, and a "Rider" contained the following provision: "For the term of Six months beginning on that date [September 8, 1924] the premium for the renewal of this Policy and Rider shall be $15.25." Buntin died in 1924, and one Dwight R. Woodford took over his insurance business, including the policy on account of the defendant.

Evidence for the plaintiff was to the effect that the "renewal" premium due September 8, 1924, came in on November 9, 1924, after Buntin's death, and was collected by the plaintiff as agent for Buntin and credited to his account; that the premiums due March 8, 1925, and September 8, 1925, were paid to Woodford; that the premium due March 8, 1926, was paid to Woodford; that the premium due September 8, 1926, was not paid; that some-

time after September 8, 1926, the plaintiff corporation was formed, and, under the name of Dwight R. Woodford Co., Inc., took over the personal insurance business of Dwight R. Woodford; that the policy was renewed again in 1927, and the premiums due March 8, 1927, and September 8, 1927, were not paid; and that the policy was again renewed in March, 1928, and the premium due March 8, 1928, was not paid. It was in evidence, and not denied by any testimony for the defendant, that the plaintiff sent the defendant a letter dated December 7, 1926, the material part of which reads as follows: "Enclosed please find a statement of your account in the amount of $15.25. This account is long overdue, and would appreciate prompt settlement." It was in evidence that Woodford, the then president and treasurer of the plaintiff corporation, sent a letter addressed to the defendant on August 11, 1928. Neither the letter nor a copy of it was offered in evidence, and there was no secondary evidence of its contents. There was evidence that warranted a jury finding that the defendant replied to the letter of Woodford by a letter without date. The genuineness of this letter was not contested. It was addressed to the plaintiff and reads as follows: "Regarding accident policy in the Travelers taken through your company. This policy was taken through the late Richard Buntin and the understanding with him at that time, was that the policy would be only for one year, and I believe the policy was paid for that period of time. I know in insurance circles and business it is the custom to take the renewal of a policy for granted. I would gladly pay you if I could but sickness and death has taken all my money." There was evidence for the plaintiff that on November 26, 1928, the president of the company, in the name of the company, wrote a letter to the defendant which could have been found on the evidence to have been received by him, wherein it is stated: "We have continually kept this policy in force for you ever since that time [that is the death of Buntin]. You have paid the premiums as they have fallen due from time to time up until the premium that was due September 8th, 1926 which was billed

to you under date of August 23rd.   I do not have any record that that premium has ever been paid.   We have no advices from you to the effect that you did not wish your policy renewed. . . . The total amount of indebtedness that we have advanced to the company [the Travelers Insurance Company] now amounts to $61.00 and the only indication that we have had from you in reference to the matter was a letter that you wrote answering our letter of August 11th."   There was evidence for the plaintiff that Woodford had a talk with the defendant in reference to this account in the spring of 1929, at the Parker House, in Boston, and "told Johnson that he came in regard to his account and that he wanted to get the matter cleaned off the books; that Johnson stated that he knew the policy had been continued in force; that he knew that it was the custom of the insurance companies to do that; that he had never advised them prior to August 11, 1928, that he did not wish his insurance, and that if it was not because of the fact of sickness and death that had taken all money, and he was very heavily in debt, he would be glad to pay the premium; that Johnson couldn't tell the witness anything definite as to when he could; that he wouldn't make a definite statement when he would make any payment on the account."

There was evidence for the plaintiff that Buntin was agent for the insurance company when the policy was written; that Woodford was agent for the insurance company when he took over Buntin's business through an assignment from the executrix of Buntin's estate; that the assignment "purported to assign all the clientele of Mr. Buntin to . . . [him] for the purpose of continuing their insurance in force"; that Woodford after Buntin's death did business under the name of Dwight R. Woodford and Company; that when Woodford's agency expired he turned over to the corporation which then had been formed under the name of Dwight R. Woodford Co., Inc., the right to renew the policy of Johnson; and that the corporation took over his (Woodford's) personal insurance business.   The plaintiff put in evidence two renewal receipts issued by the

Travelers Insurance Company, which, it could be found, represented the first and last premiums claimed in this action, and a third premium receipt and renewal certificate, shown as the third item in the account annexed. The evidence warranted a finding that the plaintiff had possessed a receipt and renewal certificate covering the second item in the account, but that such receipt had been mislaid or lost; also, that the renewal receipts were never sent to the insured until the plaintiff had received the premium payment, and that the only evidence of renewal was the premium receipt and renewal certificate, a copy of which is shown in the record. There was no letter introduced in evidence, proved by copy or otherwise, notifying the defendant that the plaintiff held renewal certificates subject to delivery to the defendant on payment of premiums; nor any corporation book in court from which it could be determined when, if ever, the premiums called for by the policy were paid by the plaintiff. It was admitted at the trial that Woodford was authorized to act as agent for the Travelers Insurance Company from July 1, 1926, to June 30, 1927, a period which covers items 1 and 2 of the account annexed.

The first contention of the defendant in support of his motion for a directed verdict is based upon the established rule of law that an agent of a known principal cannot sue in his own name upon the breach of a contract made by such agent in behalf of his principal, citing *Borrowscale* v. *Bosworth*, 99 Mass. 378. See *Buffington* v. *McNally*, 192 Mass. 198, 202. The short answer to this argument is that the plaintiff seeks to recover in this action, not upon a debt due or to become due to its principal, but in its own right upon a promise of the defendant, express or implied, to reimburse the plaintiff for money paid at the request of the defendant. To this possible statement of the plaintiff's position (it has made no oral argument nor filed any brief) the defendant answers that he made no express request that Buntin should obtain a new policy or a renewal of the old policy upon its expiration. He contends that, if he did have an agreement with Buntin for the renewal of the policy, which contemplated the possible

payment by Buntin, in behalf of the defendant, of the renewal premiums as they became due, the agency of Buntin to make such payments was terminated with his death; that the authority of Buntin could not be exercised by the administratrix or executrix of his estate; and that consequently Woodford acquired no right through the administratrix or executrix of Buntin's estate to act for the defendant or to charge him for the premiums paid on his behalf. Assuming the custom of insurance agents was to care for the renewals of insurance policies of the kind issued to the defendant, and that such custom was known and assented to by the defendant (see defendant's undated letter above copied in part and giving regard to the conversation alleged to have been had between Woodford and the defendant at the Parker House in the spring of 1929) the defendant says that Woodford could not assign the right to the corporation.

It is manifest that the defendant had the right to select and determine what agency should care for his policy and look after the renewal payments of premiums as they should become payable; *Boston Ice Co.* v. *Potter*, 123 Mass. 28; but the principle of that case is not applicable where the personality of a person delivering goods or otherwise rendering service to a person is a matter of indifference. *Lunn & Sweet Co.* v. *Wolfman*, 256 Mass. 436, 442, and cases cited.

Enough has been said to disclose that a real question of fact was before the jury on the issue whether there was a custom in insurance circles for the agent to take charge of the renewal of insurance policies of the kind issued to the defendant, and as to whether the defendant expected Buntin, and the agency which took over the defendant's policy after Buntin's death, to attend to that matter. The motion for a directed verdict for the defendant was denied rightly.

The allowance of the motion for a directed verdict for the plaintiff was error, for the following among other possible reasons disclosed by the record: (1) The credibility of the principal witness for the plaintiff was a question for

the jury; and, (2) there being no records of the plaintiff and none of the insurance company to show by whom and when the payments were made, it was for the jury to determine those facts. The possession of the certificates of renewal was evidence that the holder of them had paid the renewal premiums in behalf of the defendant, but their possession was equally consistent with their deposit by the insurance company with the plaintiff, not to be delivered to the defendant until the plaintiff as agent for the insurance company was paid. This issue was for the jury. There was a further issue for the jury in connection with the letter alleged by the plaintiff to have been delivered by the defendant to it in reply to an alleged letter of the plaintiff dated August 11, 1928. The delivery of this letter, which is not dated, was of great importance to the plaintiff and the defendant; its date and the time of its delivery were issues for the jury. The alleged interview at the Parker House in the spring of 1929 also presented an issue of fact as to whether there was such an interview and, if so, as to how much of the alleged conversation was believable. Both the letter and the conversation were important in the determination of the issue whether the payments alleged to have been made by the plaintiff were made upon an implied request of the defendant to make them in his behalf.

*Exceptions sustained.*